LAMPHERE v. OREGON R. & NAV. CO. et al.

(Circuit Court of Appeals, Ninth Circuit. May 6, 1912.)

No. 2,066.

COMMERCE (§ 27*)—EMPLOYER'S LIABILITY ACT—EMPLOYÉ "EMPLOYED IN INTERSTATE COMMERCE."

A locomotive fireman in the employment of a railroad company engaged in interstate commerce, who was ordered by his superiors to report at a station to be transported with others to another station to relieve the crew of an interstate train, and who, when approaching the station over a crossing, was struck and killed through the negligence of other servants of the company, also operating an interstate train, was employed in interstate commerce at the time of his death within the meaning of Employer's Liability Act April 22, 1908, c. 149, § 1, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), and an action will lie for his death under such act.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*

For other definitions, see Words and Phrases, vol. 3, pp. 2377–2380; vol. 8, p. 7649.

What law governs master's liability for injuries to servant, see note to Mexican Cent. Ry. Co. v. Jones, 48 C. C. A. 232.]

In Error to the Circuit Court of the United States for the Eastern Division of the Eastern District of Washington.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

Action at law by P. L. Lamphere, as administrator of the estate of C. Roy Lamphere, deceased, and as the personal representative of said deceased, against the Oregon Railroad & Navigation Company and the Oregon-Washington Railroad & Navigation Company. Judgment for defendants, and plaintiff brings error. Reversed.

For opinion below, see 193 Fed. 248.

The writ of error in this case brings under review the judgment of the court below, sustaining a demurrer to the complaint of the plaintiff in error. The action was brought by the administrator of the estate of one Lamphere, deceased, and the complaint alleged, in substance, that the said Lamphere was a locomotive fireman in the employment of the Oregon Railroad & Navigation Company; that his duties required him to respond at any time upon an order to do so; that on December 1, 1910, at 7:15 p. m., he was ordered by the said railroad company to proceed from his home in the town of Tekoa, Wash., to the depot in that town, to secure transportation there, and go on board a certain interstate train which was due at 7:45 p. m., and to proceed to a certain other town in the state, and there to relieve an engine crew which had been continuously employed for more than 16 hours on an engine hauling an interstate train; that, after receiving said order, he hastened to the depot of the company in Tekoa, and had reached a crossing in the yards of the Railroad Company where the cars were cut, when, without warning, the cars were suddenly closed by reason of other cars being carelessly and negligently kicked against them, and that thereby he sustained injuries which resulted in his death. The complaint alleged that at the time of the happening of the injury and death of Lamphere, "and immediately prior thereto, he was engaged in the performance of his duty in the employment of the said Oregon Railroad & Navigation Company in doing and performing exclusively the acts and things necessary and properly to be done in the performance of his said duties in obedience to the order of said company, and as a part of the necessities and requirements of said company in aid of and as a part of the operation of its cars, engines, and trains in carrying on its business of interstate commerce by railroad." The complaint further alleged that Lamphere had been for a long time a locomotive fireman in the employment of said company, and that his duties as such fireman required him to respond at any time of the day or night when he should be called upon by said company to perform any of his said duties assigned to him from time to time. The complaint alleged, also, that the crossing used by said Lamphere was one which had been used by him and other employés of the company in the performance of their duties, and by the general public of Tekoa and the vicinity.

W. H. Plummer and Henry Jackson Darby, both of Spokane, Wash., for plaintiff in error.

W. W. Cotton, Arthur C. Spencer, and Ralph E. Moody, all of Portland, Or., for defendants in error.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). It is conceded that the negligence which caused the death of the plaintiff in error's intestate was negligence of the latter's fellow servants, but it is contended that the complaint states a cause of action in that the allegations thereof bring the case within the provisions of Employer's Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322).

There are decisions which hold that an employé of a railroad company while going to and from his work is not engaged in the service of his employer, and is not the fellow servant of other employés of

the same master, but there are cases holding to the contrary, and, whatever may be the conflict of authority as to the ordinary case of an employé going to and from his work, there can be no question that he is in the service of his master, and is a fellow servant of his co-employés whenever he is doing that which under his contract of employment he is bound to do. Dishon v. Cincinnati, N. O. & T. P. Ry. Co. (C. C.) 126 Fed. 194; Olsen v. Andrews, 168 Mass. 261, 47 N. E. 90; Boldt v. N. Y. C. R. Co., 18 N. Y. 432; Ewald v. Chicago & N. W. R. Co., 70 Wis. 420, 36 N. W. 12, 591, 5 Am. St. Rep. 178. The deceased when he was killed was not only on his way to work for his employer, but he was proceeding under the direct and peremptory command of the Railroad Company to do a designated specific act in the service of the company, to wit, to move a train then engaged in interstate commerce. He was on the premises of the Railroad Company and in the discharge of his duty when he met his death, and the train which struck him and caused his death was engaged in interstate commerce, and belonged to the same railroad company. Must a fireman be actually in his place of duty on the locomotive of a train which is engaged in commerce between the states in order that he may be said to be employed in interstate commerce? If he is commanded to step down from his train and proceed across the track and take his place on another train engaged in interstate commerce and he is injured while on the way, will it be said that he was not employed in interstate commerce when he received the injury? The case supposed is substantially the case which is now before the court.

In Zikos v. Oregon R. & Navigation Co. (C. C.) 179 Fed. 893, it was held that one who was engaged in repairing the defendant's main track and driving spikes in the ties for the purpose of tightening the joints of the rails was engaged in interstate commerce, and that he could recover for injuries sustained through the negligence of a fellow servant who was also engaged in such commerce. In Colasurdo v. Central R. R. Co. of New Jersey (C. C.) 180 Fed. 832, where a track walker was injured while assisting his fellow employés in repairing a switch in a railroad yard, the switch being connected with a track used for both interstate commerce and intrastate commerce, it was held that he was engaged in interstate commerce within the Employer's Liability Act. Said the court:

"Would not a track walker engaged in the repair of such a track be engaged in interstate commerce? I do not think he would be any the less so engaged than the engineer on the locomotive or the train dispatcher who kept the trains at proper intervals for safety."

In Behrens v. Illinois Central R. Co. (D. C.) 192 Fed. 581, the plaintiff's intestate came to his death through an accident while he was employed as fireman on an engine of a switching crew, the duties of which were to switch cars that had to move both in interstate and intrastate commerce indiscriminately. Foster, District Judge, said:

"I consider that the usual and ordinary employment of the decedent in interstate commerce, mingled though it may be with employment in commerce which is wholly intrastate, fixes his status and fixes the status of the railroad, and the mere fact that the accident occurred while he was engaged in

work on an intrastate train, rather than a few minutes earlier or later, when he might have been engaged on an interstate train, is immaterial. If he was engaged in two occupations that are so blended as to be inseparable, and where the employé himself has no control over his own actions, and cannot elect as to his employment, the court should not attempt to separate and distinguish between them."

In Central R. Co. of New Jersey v. Colasurdo, 192 Fed. 901, the Circuit Court of Appeals for the Second Circuit affirmed the decision above cited in 180 Fed. 832, and the court said:

"The car which struck the plaintiff was employed in interstate commerce. It connected with defendant's ferry boats at Jersey City, and passengers from New York to Somerville, N. J., and vice versa, were transported in it. The track and switch in question were used by engines and cars so engaged. We think the statute was intended to apply to every carrier while engaging in interstate commerce, and to an employé of such carrier while so engaged, and, if these conditions concur, the fact that the carrier and the employé may also be engaged in intrastate commerce is immaterial. The plaintiff was repairing an interstate road over which interstate passengers and freight and cars and engines engaged in interstate commerce were constantly passing."

Counsel for the defendant in error contend that the act applies only to employés of railroad companies who are at the time actually engaged in the movement of interstate commerce, and they deny that others, such as those who are employed in the shops of a railroad company where its engines are repaired, or are repairing its tracks or roadbed, are employed in interstate commerce, and they cite the case of Pedersen v. Delaware, L. & W. R. R. (C. C.) 184 Fed. 737, in which it was held that, although the railroad company was engaged in both interstate and intrastate business at the time of the plaintiff's injury, he, being an employé engaged at that time in bridge construction on the track of the company which was to be used for such commerce, was not engaged in interstate commerce. The decision in that case runs counter to the cases above cited, and we think it is also opposed to the doctrine of the recent decision of the Supreme Court in Mondou v. New York, N. H. & H. R. Co., 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. ——. The judgment in that case disposes of three cases involving the application of the Employer's Liability Act. In one of the cases, the judgment in which was affirmed, the action was brought and damages were recovered by a personal representative of a deceased employé of a railroad company. The complaint alleged that the injury occurred while the defendant as a common carrier was engaged in commerce between some of the states, and while the deceased in the course of his employment by the defendant in such commerce was engaged in replacing a drawbar on one of the defendant's cars then in use in such commerce. The statement of the facts is meager, but it would appear therefrom that the employé who was injured was not one of a train crew, but was a machinist or repairer whose duty it was to replace drawbars, and that the work was done either in a yard or on a switch, for the injury resulted from the negligence of fellow servants in pushing other cars against the one on which the deceased was working. In the opinion in that case the court made certain observations concerning the act which we think pertinent to the case at bar. Affirming the power of Congress over commerce

among the states as extended incidentally to every instrument and agent by which such commerce is carried on, the court said:

"But, of course, it does not extend to any matter or thing which does not have a real or substantial relation to some part of such commerce. * * * Therefore Congress may legislate about the agents and instruments of interstate commerce, and about the conditions under which those agents and instruments perform the work of interstate commerce, whether such legislation bears, or, in the exercise of a fair legislative discretion, can be deemed to bear upon the reliability or promptness or economy or security, or utility of the interstate commerce act."

Said the court again:

"The second objection proceeds upon the theory that even although Congress has power to regulate the liability of a carrier for injuries sustained by one employé, through the negligence of another, where all are engaged in interstate commerce, that power does not embrace instances where the negligent employé is engaged in intrastate commerce. But this is a mistaken theory in that it treats the source of the injury rather than its effect upon interstate commerce as the criterion of congressional power. * * * It is not a valid objection that the act embraces instances where the causal negligence is that of an employé engaged in intrastate commerce, for such negligence, when operating injuriously upon an employé engaged in interstate commerce, has the same effect upon that commerce as if the negligent employé were also engaged therein."

As indicated in the opinion, the test question in determining whether a personal injury to an employé of a railroad company is within the purview of the act is, What is its effect upon interstate commerce? Does it have the effect to hinder, delay, or interfere with such commerce? As applied to the present case, it is this: Was the relation of the employment of the deceased to interstate commerce such that the personal injury to him tended to delay or hinder the movement of a train engaged in interstate commerce? To that question we think there can be but one answer. Under the imperative command of his employer, the deceased was on his way to relieve, in the capacity of a fireman, the crew of a train which was carrying interstate commerce, and the effect of his death was to hinder and delay the movement of that train. In our opinion the complaint states a cause of action under the Employer's Liability Act.

The judgment is reversed, and the cause remanded for further proceedings.