**YOUNG v. NEW YORK, N. H. & H. R. CO.**
**No. 100.**

Circuit Court of Appeals, Second Circuit.
Dec. 10, 1934.

John M. Gibbons, of New York City (Edward R. Brumley, of New York City, of counsel), for appellant.

Thomas J. O'Neill, of New York City (William J. Hogan, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff, Young, was a locomotive fireman in the defendant's employ; he was injured while riding on a light locomotive of the defendant between its New Haven and Cedar Hill stations. It is conceded that his injuries resulted from the negligence of the engineer in charge of the locomotive; but to recover in this action he had also to prove that he was engaged in interstate commerce at the time; and this is the only question at issue. His regular run was between New London, Connecticut, and Springfield, Massachusetts, by way of New Haven. He lived in New Haven, and had to travel from there to New London, and then six miles further east to a yard called Midway to pick up his engine. He would then go to New London where his first run began, and after reaching New Haven would board another engine attached to a second train for Springfield, where he had a wait of three hours. After that he would go back with another train to New Haven, where he got an engine attached to a fourth train for New London. This

ended the run except that the last engine went back light to Midway. He must then find his way home again. On the evening in question, June sixth, on completing his work he reached Midway at 6:45 and wished to get to New London before 7:40, else he would have to wait till 10:40 for another train to New Haven. He and his engineer walked about a mile on the Boston Post Road where they met a public bus for New London, and caught the train they were after. On this, as on the train from New Haven to New London that morning, they were free to ride "dead-head," being employees. On reaching New Haven the engineer left him and went home by trolley; but Young, with some other employees, boarded the locomotive of the train on which he had come to New Haven and which was going light to Cedar Hill about three and a half miles away. The accident happened on this leg of his journey.

He was of course in his working clothes while firing his engine; and he wore them also while going back and forth between Cedar Hill and Midway. As it was summer and the firing of a locomotive is hard, sweaty work, they consisted only of his underclothes and his overalls. That morning he had left his street clothes at Cedar Hill, and picked them up again on his way to Springfield, where he wished to dress and go out into the town during his three hour stop. When he got back to Cedar Hill and changed engines for the run from New Haven to New London, he again left his street clothes there, and it was to get them and change into them that he was going back to Cedar Hill when he was injured. The defendant had promulgated a rule of which Young was aware, forbidding any employee to ride on a light locomotive, but the evidence allowed the jury to find that it had been continuously disregarded for a substantial time. Assuming arguendo that this made it a dead letter, the defendant had at least not invited him to use the locomotive.

The defendant asked for a dismissal of the complaint at the end of the whole case, because Young was not engaged in interstate commerce while en route between New Haven and Cedar Hill, but the judge left the question to the jury. They found for the plaintiff and the defendant appealed.

█ Although Young had finished his run when he came back to Midway, that did not inevitably conclude his employment, or his occupation in interstate commerce; so much at least was definitively settled in Erie R. Co. v. Winfield, 244 U. S. 170, 172, 173, 37 S. Ct.

556, 61 L. Ed. 1057, Ann. Cas. 1918B, 662, a decision from which a good deal of law has sprouted. But it does not settle just when he does end his employment, or when he begins it, and, generally speaking, it does not include either going to or coming away from the place where the job is carried on. Voehl v. Indemnity Ins. Co., 288 U. S. 162, 169, 53 S. Ct. 380, 77 L. Ed. 676, 87 A. L. R. 245. One exception is when the workman is in a vehicle provided for him by his employer. Spencer Kellogg & Sons v. Hicks, 285 U. S. 502, 52 S. Ct. 450, 76 L. Ed. 903; Atlantic Coast Line R. Co. v. Williams, 284 F. 262 (C. C. A. 5). Another, when he has not yet left the premises, or has entered them on his way to work. Lamphere v. Oregon R. & N. Co., 196 F. 336 (C. C. A. 9); Easter v. Virginian R. Co., 76 W. Va. 383, 86 S. E. 37; Davis v. Chicago, etc., R. Co., 134 Minn. 49, 158 N. W. 911; Louisville, etc., R. Co. v. Walker, 162 Ky. 209, 172 S. W. 517; Ewig v. Chicago, etc., R. Co., 167 Wis. 597, 167 N. W. 442, 169 N. W. 429; Knowles v. N. Y., N. H. & H. R. Co., 223 N. Y. 513, 119 N. E. 1023; Pallocco v. Lehigh Valley R. Co., 236 N. Y. 110, 140 N. E. 212; Wabash Ry. v. Industrial Commission, 294 Ill. 119, 128 N. E. 290. This last consideration is, however, by no means a conclusive test. His employment may begin before he reaches the premises. Cudahy Co. v. Parramore, 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532; Bountiful Brick Co. v. Giles, 276 U. S. 154, 48 S. Ct. 221, 72 L. Ed. 507, 66 A. L. R. 1402; Moss Tie Co. v. Tanner, 44 F.(2d) 928 (C. C. A. 5). Conversely, if there are alternative ways of reaching the job, one across the employer's property and another elsewhere, the employer's liability will depend upon whether it is "reasonably necessary" for the workman to use the first, or whether he does so merely for his "convenience." Hoyer v. Central R. Co. of N. J., 255 F. 493 (C. C. A. 2); Krysiak v. Pennsylvania R. Co., 270 F. 758 (C. C. A. 3); Aldredge v. Baltimore & O. R. R. Co., 20 F.(2d) 655, 660 (C. C. A. 8); McInerney v. Buffalo & S. R. Corporation, 225 N. Y. 130, 121 N. E. 806; Tallon v. Interborough R. T. Co., 232 N. Y. 410, 134 N. E. 327, 21 A. L. R. 1218; Ames v. N. Y. Central R. Co., 178 App. Div. 324, 165 N. Y. S. 84; Hills v. Blair, 182 Mich. 20, 148 N. W. 243; Symonski v. Central Ry. of New Jersey, 102 N. J. Law, 271, 131 A. 628; Id., 103 N. J. Law, 508, 135 A. 921. Cf. Dodge v. Chicago G. W. Ry. Co., 164 Iowa, 627, 146 N. W. 14. This last corollary does not mean, as we understand it, that to hold the employer, the workman's choice must be instrumental to the

work. For example, it would be untrue, except in a very remote and unreal sense, to say that it helped a railroad to have its workmen cross its railway track rather than go two miles around. The road would for all practical purposes be as well served if they went the long way; and yet it would be "unreasonable" to require them to do so. Although only their own convenience would be met, that would be enough in so extreme a case. Concealed within the phrases used, there is the unconscious solution of a conflict of interest between the two; the workman's convenience and the employer's freedom from responsibility. Any such solution presupposes that some value has been set on each; but there can be no general principle, for the interests are various, and there is no conventional scale in which they have a recognized place.

█ In the case at bar we are disposed to hold against the plaintiff. So far as concerned his passage from New Haven to Midway to get his train, and from Midway to New Haven after he got through, perhaps he was engaged in interstate commerce. The disproportionate hardship of requiring him to go otherwise than by train may be enough; we need not, and we do not, say. Tallon v. Interborough R. T. Co., supra, 232 N. Y. 410, 134 N. E. 327, 21 A. L. R. 1218. The important question is of his choice of route when he got back to New Haven. Except that he wanted his street clothes left at Cedar Hill, into which to change, he could have gone home by trolley as the engineer did. Certainly the defendant had no conceivable interest in this; he was as good a fireman whether he went upon the streets of Springfield and New Haven in overalls or in street clothes. Besides, it was summer and he did not need more than he had on; indeed he had already that day travelled over one hundred miles so clad. But, as we have said, the defendant's interest in his effective service is not the whole story; his own interest might be important enough to turn the scale. It was of two kinds; he wanted to change at Springfield so that he could better enjoy his leisure there, and he did not want to go home in overalls. Indeed the first did not demand that he leave his clothes at Cedar Hill at all; he could certainly have taken his bag with him. True, it was more convenient to pick them up at Cedar Hill, but we cannot see why such a trifling convenience should make his going for them so closely related to his employment in interstate commerce as to be considered as part of it. And more broadly, his dress in the streets of either Springfield or New Haven in summer, does not seem to us a serious interest which demands the imposition of that duty. He was of course very dirty, but he could have washed; thereafter he would have looked no worse than the engineer, who went home as he was. Overalls do not expose a man to ridicule or even to unpleasant notice; only a hypersensitive person will wince at appearing in them in the street. It may be that in Springfield he wished to go to a theatre, to visit a friend, or that he had some errand which made it unseemly not to be better dressed. If so, his desire was natural enough, but it had nothing to do with his employment, and could scarcely concern his relations with the defendant; he must arrange for it on his own responsibility.

Judgment reversed; new trial ordered.