**Mary Ann KRESS, Plaintiff,**

v.

**The LONG ISLAND RAIL ROAD, Defendant.**

**No. 81 Civ. 1055 (KTD).**

United States District Court,
S. D. New York.

Oct. 21, 1981.

Richard Frank, P.C., New York City, for plaintiff; Richard Frank, David M. Goldberg, New York City, of counsel.

Thomas M. Taranto, Gen. Counsel, Jamaica, N. Y., for defendant; Angelo Granatelli, Jamaica, N. Y., of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

This is an action to recover damages under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* ["FELA"], for injuries sustained by the plaintiff when she was raped in a parking lot owned and maintained by her employer, the defendant Long Island Rail Road ["LIRR"]. Both parties have moved for summary judgment on the issues of the application of FELA to this case and on the effect of a purported release.

Plaintiff Mary Ann Kress was employed by the LIRR as a freight clerk at its Jamaica, New York facility. Each day she traveled to work from her home near Huntington, New York, aboard one of defendant's passenger trains. The LIRR provided the plaintiff with a free pass to ride the train and permitted her to park her car for free at the Huntington railroad station in a lot which was owned and maintained by the LIRR for the exclusive use of its employees. Evidently, there were no parking facilities available at the Jamaica station where plaintiff worked. The complaint, as amended, alleges that on the evening of May 23, 1980, the plaintiff was raped in defendant's Huntington parking lot while on her way home from work. Ms. Kress seeks damages for her injuries caused by the alleged negligence of the LIRR in failing to provide adequate lighting and security at the parking lot.

Several weeks after the incident, the plaintiff signed a release which purportedly discharged the LIRR from any obligations "for personal injuries sustained by [the plaintiff] and for loss of and/or damage to wearing apparel and other personal property, while employed as Clerk at or near Huntington, New York, on or about May 23, 1980" in return for $789.18.

The defendant interposed an answer denying any knowledge of the rape incident. This answer was made despite a LIRR medical examiner's report stating that the plaintiff incurred a "vaginal injury." [Exh. I, Granatelli Affidavit]. The defendant submits that the complaint fails to state a claim under FELA and that there is no subject matter jurisdiction over this matter. Further, defendant argues that any injuries to plaintiff were caused by her own negligence, and that to the extent the plaintiff was injured she was acting outside the scope of her employment. It is urged that, therefore, she may not recover under FELA. Alternatively, defendant contends that this complaint should be dismissed because plaintiff released defendant from all liability for any injuries.

The plaintiff has moved for summary judgment under Fed.R.Civ.P. 56 striking each of defendant's answers except that regarding plaintiff's contributory negligence. Neither party at this stage has sought a determination of whether the LIRR was in fact negligent or whether its negligence, if any, caused plaintiff's injuries. The defendant cross-moves for summary judgment and dismissal of the complaint on the grounds set forth in the answer.

### Discussion

1. *The Release*

Defendant argues that the release signed by the plaintiff precludes her from bringing this lawsuit. This release was signed ap-

proximately five weeks after the alleged incident took place. Present at the time of the signing of this release were two LIRR officers, a representative from the union to which plaintiff belonged and the plaintiff. The two LIRR officers and the union representative submitted affidavits describing the circumstances surrounding the signing of this release. They each state that the plaintiff was fully apprised of the ramifications of signing this release, to wit, that she would be relinquishing her right to sue the defendant for the May 23, 1980 incident. Defendants argue that the union representatives adequately represented plaintiff's interests at the signing of the release.

 It is well settled that the validity of a release in a FELA case is governed by federal law, *Dice v. Akron, C & Y R. Co.,* 342 U.S. 359, 361, 72 S.Ct. 312, 314, 96 L.Ed. 398 (1952), which recognizes *inter alia* inadequate consideration, *Maynard v. Durham & S Ry. Co.,* 365 U.S. 160, 81 S.Ct. 561, 5 L.Ed.2d 486 (1961), mutual mistake, *Taylor v. Chesapeake and Ohio Ry. Co.,* 518 F.2d 536 (4th Cir. 1975) and fraud *Apitsch v. Patapsco & Back Rivers Railroad Co.,* 385 F.Supp. 495, 503 (D.Md.1974), as grounds for setting aside a release. In this case, on the basis of plaintiff's affidavits, there presently exists genuine questions of fact regarding the adequacy of consideration for this release. Further, there remains a question of whether certain fraudulent statements were made by the defendant's representatives which induced plaintiff to sign the release. The plaintiff states that she was told to sign a "receipt" in order to receive a check for what she believed was back pay pursuant to the union contract with the LIRR. The release itself appears to say that $789.18 was paid "pursuant to a collective bargaining agreement between the [LIRR] and the union representing [the plaintiff]." If this amount was already due as back pay the release of defendant's liability for plaintiff's injury would not have been supported by consideration. Of course, if there was no pre-existing obligation to pay this amount, then there exists the question of whether the plaintiff was fraudulently induced to sign the release.

Furthermore, plaintiff's affidavit asserts that union officials warned her against adverse union action if she had a lawyer represent her in this matter.

Viewing the record before me, in a light most favorable to plaintiff, there appear to be genuine issues of fact over the validity of the release thus precluding summary judgment for the defendant on this ground. *See First National Bank of Cincinnati v. Pepper,* 454 F.2d 626, 629 (2d Cir. 1972). On the other hand, plaintiff's motion for summary judgment regarding the validity of the release also appears inappropriate because of the affidavits submitted by defendant which state that the settlement offer did not represent back pay [Hanley Affidavit ¶ 2] and no coercive or fraudulent tactics were used to force plaintiff to sign the release. The resolution of these factual issues is unnecessary in light of my ultimate decision in this case.

### 2. *Stating a Claim Under FELA*

According to the defendant, no FELA claim lies under the facts alleged by the plaintiff because it is clear as a matter of law she was acting outside the scope of her employment when the alleged rape occurred. Section 1 of FELA, 45 U.S.C. § 51 (1939), provides in pertinent part:

> Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the

purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter.

The purpose of this section is "to enlarge the remedy of railroad employees injured as a result of the hazards incident to their work . . . ." *Metropolitan Coal Co. v. Johnson*, 265 F.2d 173, 178 (1st Cir. 1959). Defendant's argument presents the vexing issue of whether traveling to or from work may be considered an act within the scope of one's employment so as to be covered by FELA. Although FELA coverage is not strictly limited only to those instances when an employee is actually on the job, *see, e. g., Morris v. Pennsylvania R. Co.*, 187 F.2d 837 (2d Cir. 1951), numerous cases have refused to extend FELA coverage to employees who sustain injuries en route to or from work unless the employer required the employee to use that route. *See Metropolitan Coal Co. v. Johnson, supra; Quirk v. New York C. & St. L. R.R.*, 189 F.2d 97 (7th Cir.), *cert. denied*, 342 U.S. 871, 72 S.Ct. 105, 96 L.Ed. 655 (1951); *Sassaman v. Pennsylvania R.R. Co.*, 144 F.2d 950 (3d Cir. 1944).

Defendant argues that these latter cases are dispositive of the case at bar. At least two of these cases deserve discussion. In *Metropolitan Coal*, the plaintiff was a freight conductor for the defendant railroad. One afternoon he traveled to Boston from his home in Rhode Island aboard one of defendant's passenger trains in order to join the crew of his freight train. Pursuant to a union contract, the railroad issued a free pass to the defendant for passenger train service. When the plaintiff was injured on the passenger train, he sued the defendant railroad for negligence under FELA. The First Circuit Court of Appeals held that the plaintiff could not sue under FELA and noted two important facts. First, "although the plaintiff was on the carrier's premises when he was injured, he was not on a part of its premises which it was necessary for him to use to reach his work. He was not required to go to work on the defendant's passenger train. He could have taken any one of a number of other routes, trains or means of transporta-

tion to go from his home to his work." 265 F.2d at 178. Second, the court stated that "the obvious purpose of the FELA is to enlarge the remedy of railroad employees injured as a result of the hazards incident to their work. [W]hile he was riding to work on one of his employer's passenger trains, . . . he was exposed to no other or greater hazard than any other passenger." *Id*. The court emphasized that taking the passenger train, despite the free pass, was "still only one of several other means of transportation the plaintiff might have chosen." *Id*.

In *Sassaman*, a case heavily relied upon by the court in *Metropolitan Coal*, the injured plaintiff rode upon one of his employer's passenger trains on his way home from a day's work as a train dispatcher. When the train arrived at its destination in Newark, New Jersey, the plaintiff slipped on the train platform sustaining injuries. The Third Circuit, sitting *en banc*, decided that the employee could not sue under FELA because "the employee's presence upon the premises where he receive[d] his injuries [was not] a necessary incident to the discharge of the duties of his employment." 144 F.2d at 952. The court explained that "the condition which makes possible a claim for injuries suffered as in the course of employment but which are actually received on premises away from the employee's place of employment is the fact that the employee must, of necessity, traverse such other premises in order to reach or depart from the place of the discharge of his duties." *Id*. at 953. In *Sassaman*, the plaintiff "was free to travel home or go elsewhere, as suited his desires, by whatever means of transportation he chose. He was not required to travel on the defendant's trains." *Id*.

The plaintiff urges that in effect she was required by her employer to take the train to Huntington and to use the defendant's parking facility there. She argues that she was given a free pass to travel on the train and free parking at the Huntington Station because, as her employer knew, this was the only way she could get to work in Jamaica.

Support for plaintiff's position lies in the Second Circuit case, *Parker v. Long Island Railroad Co.*, 425 F.2d 1013 (2d Cir.), *cert. denied*, 400 U.S. 829, 91 S.Ct. 57, 27 L.Ed.2d 58 (1970). There, the plaintiff, a track maintenance foreman for the railroad, was provided by the railroad with a free pass to commute to his home some forty miles from where he worked. One day, on his way home after a day's work, Parker was injured at a passenger station maintained by the railroad when he fell on a stairway due to inadequate lighting. Unlike our plaintiff, however, Parker was considered to be on duty at all hours in the event of an emergency. The district court left the question of employment at the time of the accident for the jury. In affirming the district court, over a dissent by Judge Friendly, a majority of the court cited such factors for the jury's consideration as the fact that the plaintiff was on call to the railroad at all times in case of emergency and that he "lived such a distance from [work] ... that it was not economically feasible for him to continue the employment if he was not furnished with the free railroad travel." *Id.* at 1015.

In his dissenting opinion in *Parker*, Judge Friendly argued that the use of a free pass to travel home is not a sufficient basis to automatically find that a plaintiff was within the scope of his employment. He reasoned that traveling on such passenger trains does not expose the plaintiff to any greater hazards than are endured by a regular passenger. On the record before me, I believe this is not a case where *Parker* controls. Plaintiff's injury is not covered by FELA as a matter of law. Unlike the plaintiff in *Parker*, Ms. Kress was not on call at the time she was injured. The railroad did not provide free parking for the purpose of having the plaintiff available at all times of the day or night. In *Parker*, this was an important consideration in the court's finding of liability under FELA:

> The jury could have found that at Parker's pay rate, $128 a week, and travel to and from his home of 80 miles a day, it would be unreasonable to expect him to furnish his own transportation. This is

not to say that ordinarily employer-paid transportation between home and work is in the course of employment, but where, as here, the employer has an interest in availability of the man for emergencies, the jury was not necessarily barred from finding the travel to be in the course of employment.

425 F.2d at 1015.

In the case at bar, the free parking was provided for the convenience of the plaintiff, not for the convenience of the railroad. Plaintiff has not proven that her commutation from her home in Melville to her job in Jamaica was only made possible by the availability of the Huntington railroad parking lot. Also, Ms. Kress' unsupported allegation that the lot was a vital condition to her employment is the sole indication of a LIRR interest in providing free parking. In sum, it is clear from the record before me that the use of the parking lot some twenty-five miles from the place where plaintiff was employed as a clerk cannot be viewed as within the scope of employment under FELA. To find otherwise, even on this motion for summary judgment, would unduly expand the application of FELA beyond its intended bounds. Plaintiff was the victim of a heinous crime which defendant may have been able to prevent. She may still have an action in state court for negligence to remedy this possible wrong. She may not, however, sue in federal court under FELA.

Accordingly, defendant's motion to dismiss is granted.

SO ORDERED.